UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KELLY DEAN BRENDE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:15-cv-09711-JAR |
| | ) | |
| v. | ) | |
| | ) | |
| RELIANCE STANDARD LIFE | ) | |
| INSURANCE COMPANY. | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF BRENDE'S MOTION FOR SUMMARY JUDGMENT**

**A. The Sixth Circuit Court of Appeals' Decision in *Okuno*.**

In its supplemental brief, Defendant has identified and characterized the essential issues in *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600 (6th Cir. 2016) . The parties largely agree as to *Okuno*'s factual background and its legal significance. The *Okuno* Court held that when a mental illness limitation includes "caused or contributed to by" language, the provision is evaluated using a "but for" analysis. Under this approach, the presence of medical evidence of a mental illness does not necessarily preclude an award of benefits. Rather, if another ailment or combination of ailments cause the claimant's disability, the limitation does not disqualify her from benefits.

Plaintiff Okuno suffered from Chron's disease, narcolepsy, and Sjogren's syndrome, among other conditions. Reliance attempted to apply its mental or nervous disorder limitation as a result of reports of anxiety and depression in the record. The *Okuno* Court held that Reliance mistakenly took the position that the presence of mental illness in the record automatically justified invoking the limitation. *Id*. at 608.

Defendant also cites *Eastin v. Reliance Standard Life Ins. Co.*, No. 13-6247, 2014 WL 3397141 (6th Cir. July 10, 2014) (per curiam). Defendant argues that this case "is akin to *Eastin*, in which the Sixth Circuit upheld the denial of benefits." Def.'s Supp. Br. p. 4. However, the facts here are not analogous to those in *Eastin*. First, Plaintiff Eastin acknowledged the presence of mental health conditions and impairments. Here, though, there was no evidence of a mental health impairment, and Brende made no such concession. Furthermore, there are no medical professionals who have identified limitations resulting from any mental health condition. As discussed below, the record contains no evidence that Brende's ability to work is constrained due to psychiatric limitations.

Second, Reliance's two reviewing physicians in *Eastin* performed their reviews of the claimant in person. One physician performed a neuropsychological evaluation, and the other examined Eastin's physical complaints. Following her physical evaluation, Reliance concluded that she was not totally disabled as the result of a purely physical condition. Here, Reliance founded its initial determination to terminate benefits on Dr. Bellino's opinion – a file reviewed performed by a family medicine practitioner. Dr. Bellino arguably commented on her physical complaints, but he conducted only a file review of the case. After that review, he opined that it was "plausible that mental nervous condition [sic] is the underlying cause of her symptoms." AR 1048. Defendant appeared to have led Dr. Bellino to this conclusion, informing him that the claim had already been adjudicated within the limitation. In a letter to Defendant, Brende's counsel advised Defendant of its portentous error. AR 1006. Additionally, unlike Eastin, the closest that Reliance came to physically evaluating Brende was neurologist Dr. Kaplan's examination. Dr. Kaplan opined that Brende could perform no more than sedentary work. AR 956.

Third, when approving Brende's claim, Defendant expressly concluded that she was physically disabled. It advised Brende that "[a]t present, the medical information within your claim file does not suggest that your disability could fall within this limitation in the future." AR 352. This fact is absent from *Eastin*.[1] Defendant previously admitted that Brende's physical limitations prevented her from performing her own occupation and that the policy's mental or nervous disorder limitation did not apply. Those limitations did not subside over the period of time leading up to Defendant's termination of benefits, and Defendant did not identify any evidence suggesting that they did. Similarly, no psychiatric limitations appeared in that time.

Brende has maintained that she is disabled due to a condition outside of the limitation. Both Dr. Levy and psychiatrist Dr. Jones supported this position. Dr. Levy noted that "with a GAF [score] of 80, [psychiatric limitations] are not expected to be encountered." AR 971. Moreover, he was critical of Dr. Bellino's scavenging for a psychiatric limitation. Commenting on Dr. Bellino's emphasis on a reference in the record to Brende experiencing a stressful year, Dr. Levy noted that "[w]hile he knows these are not psychiatric diagnoses, it as if he considers them close to being diagnoses." AR 965. Dr. Jones likewise found no indications for psychiatric care. AR 1011. Defendant failed to acknowledge or comment on this examination. In any event, unlike *Eastin*, in this case there is no evidence of a psychiatric impairment, despite Defendant's efforts to manufacture one. In its attempt to apply the limitation, Defendant abused its discretion.

---

[1] "Eastin does not contend that she was totally disabled as the result of a purely physical condition, and Eastin's medical records support a finding that her depression and anxiety contributed to her condition." *Id*. at * 2.

**B. Defendant's review of Brende's claim is inconsistent with *Okuno*.**

Defendant contends that its appeal claims managers' reviews of Brende's claim and her appeal are consistent with *Okuno*. In support, Defendant draws attention to language in both the initial denial letter and final denial letter that addresses Brende's physical limitations. While it is true that segments of these letters do briefly address Brende's physical capacity, they are insufficient to satisfy the analysis required under *Okuno*.

Defendant notes that its initial denial letter contained references to a medical opinion discussing Brende's physical capacity. More specifically, Defendant points to Dr. Bellino's opinion that "there is no support in physical findings for complaints of weakness." Def.'s Supp. Br. p. 2. Although weakness is within the physical domain, its single mention in Defendant's initial denial letter does not constitute sincere consideration of whether Brende's physical limitations alone were disabling. The record reflected a variety of other physical impairments and limitations. In fact, none of the limitations identified by Dr. Allen and Dr. Levy were psychiatric or were the consequence of a mental health diagnosis.

Additionally, at the time Defendant issued its initial denial letter, it was unjustified in invoking the limitation. Its attempts to characterize a mental or nervous disorder as the source of Brende's impairments and limitations were unjustified. None of Brende's treating physicians came to that conclusion. Furthermore, in invoking the limitation, Defendant relied entirely upon the expertise of Dr. Bellino – a family medicine practitioner – and a nurse apparently employed by Defendant.

In other words, Defendant could not have properly applied *Okuno*'s "but for" test in its initial denial. Dr. Bellino was neither a neurologist nor a psychiatrist. Nor was he a physiatrist, trained in assessing an impaired individual's physical functional capacity. Furthermore, Dr. Bellino never met with or personally evaluated Brende; rather, he performed his review entirely by way of medical records. As a result, he was neither a specialist nor an examining physician. He was not well-qualified to assess her neurological impairments and limitations. Indeed, he altogether failed to assess or acknowledge her positive Romberg's sign, altered sensation on her left side, and left side numbness. It is not surprising, then, that he did not appreciate the neurological significance of her resulting neurological impairments. In short, even if Dr. Bellino had been qualified and had properly assessed Brende's limitations, Defendant would not have been justified in relying on that assessment.

Defendant similarly emphasizes that its final denial letter explained that Brende's physical conditions would not prevent her from performing work function and that, regardless of whether she was psychiatrically impaired, she was not physically impaired. Def.'s Supp. Br. p. 2. While it is true that Defendant's final denial letter asserted that there was no neurological diagnosis warranting Brende's limitations, it did not engage in a "but for" analysis. AR 478. Rather, it adopted Dr. Kaplan's findings that she could perform sedentary work. In so doing, Defendant recognized exertional limitations that excluded light, medium, and heavy work. However, it offered no explanation as to the nature and source of these limitations. Given that Dr. Levy – Defendant's own reviewing psychiatrist – explicitly stated that Brende did not suffer from a psychiatric illness, it would have been impossible for Defendant to deny that her physical impairments alone

were responsible for her limitations – again, limitations that even Dr. Kaplan recognized. To the contrary, Dr. Levy criticized Dr. Bellino for suggesting that a "stressful year" justified a mental health diagnosis. AR 965. For these reasons, Defendant's final denial letter failed to engage in a "but for" analysis.

Defendant also contends that because Brende's physicians did not diagnose a physical condition responsible for her impairments that a physical disability is not supported. Def.'s Supp. Br. p. 3. Of course, it is true that Brende's treating physicians could not identify a precise condition name for her signs and symptoms. Nevertheless, both Dr. Allen and Dr. Levy provided specific physical limitations that precluded work as an attorney. And, as noted above, even Dr. Kaplan recognized that she was physically incapable of functioning at greater than a sedentary exertional level.

It is also true that Dr. Allen did not affirmatively conclude that her condition was *not* a mental or nervous disorder. However, neither the policy nor any other legal authority require Brende to provide evidence to that effect. Rather, Defendant must demonstrate that the limitation should apply. *See Okuno* at 609 (The defendant "bears the burden to show that the exclusion on which it based denial of benefits, the Mental and Nervous Disorder Limitation, applies in this case."); *see also Owens v. Rollins, Inc.*, 2010 WL 3843765 (E.D. Tenn. 2010) (placing burden on insurer to prove mental illness limitation does not apply); *Deal v. Prudential Ins. Co.*, 263 F. Supp. 2d 1138, 1143 (N.D. Ill. 2003) (same).

Additionally, Dr. Levy did in fact conclude that Brende was not psychiatrically ill. Despite Defendant's characterizations to the contrary, Dr. Levy found that Brende

6

exhibited no psychiatric impairment. He noted that "she began and continues her ordeal in good mental health." AR 969.

**C. The procedural irregularities identified in *Okuno* are also present here.**

Defendant emphasizes that it did not commit the same type of errors present in *Okuno*. Def.'s Supp. Br. p .5.[2] It argues that, unlike in *Okuno*, its reviewing physicians had relevant experience in specialties related to Brende's claim. Interestingly, Defendant conveniently omits Dr. Bellino's name from its list of reviewing physicians. Def.'s Supp. Br. p. 2. This is significant for two reasons. First, Dr. Bellino is Board Certified in Family Medicine rather than in Neurology or Psychiatry. Second, Dr. Bellino is the only medical professional suggesting a mental or nervous basis for Brende's limitations. Defendant relied almost solely on his review in its initial denial. From that review, Defendant alleged that Brende's condition "has a psychogenic contribution and [her] symptoms were related to a stressful year." Def.'s Supp. Br. p. 3.

Moreover, Defendant's use of a reviewing psychiatrist in Dr. Levy is not evidence that its decision does not exhibit the irregularities. After all, Dr. Levy's opinion squarely at odds with the application of the limitation. Dr. Levy went so far as to opine that his review "simply points toward the likelihood of an eventual diagnosis in the physical/neurological realm." AR 970.

Defendant contends that it "has been consistent in its treatment of Ms. Brende's claim." Def.'s Supp. Br. p. 5. Defendant contrasts this with the shifting reasons for denial found in *Okuno*. To the contrary, in Defendant's final denial letter, it concluded that the

---

[2] While the irregularities discussed in *Okuno* suggest conflict of interest and abuse of discretion, they are not central to the "but for" test. They need not be present to show that Reliance acted inconsistently with *Okuno* in applying that test.

7

evidence did not support a finding of disability based on psychiatric impairment. Defendant then suggested that Brende was never entitled to any benefits: "As Ms. Brende is not physically impaired or psychiatrically impaired, and as she received LTD benefits under the Mental or Nervous Disorder provision, it appears RSL has overpaid Ms. Brende LTD benefits." AR 480.

Defendant's award of benefits letter undercuts its efforts to appear consistent. Indeed, that letter expressly stated "At present, the medical information within your claim file does not suggest that your disability could fall within [the Mental or Nervous Disorder Limitation] in the future." AR 352. Additionally, Defendant has been consistent only in the sense that it has asserted the limitation as one of several reasons for denial.

Defendant contends that because it "consulted with physicians who examined Ms. Brende" that it is distinguishable from *Okuno*. Def.'s Supp. Br. p. 4. However, Defendant provides no citation in support of this assertion. This is because the record does not reflect consultation between Defendant's reviewing physicians and Brende's treating physicians. Defendant's reviewing physicians' reports make no mention of any direct communication with her treating physicians. Similarly, the record does not reflect that Defendant's claims specialists had such direct communication.

Defendant also notes that it provided Brende a copy of Dr. Kaplan's report and afforded her an opportunity to comment. Def.'s Supp. Br. p. 4. While this is accurate, it is not central to *Okuno*. This courtesy does not relieve Defendant of its other duties.

Defendant argues that Dr. Levy's opinion supports the application of the limitation. However, Dr. Levy explicitly concluded that "I cannot support a convoluted notion like: she had a psychiatric condition in 2012 none of her doctors thought was

8

there, and that now she is concealing [the] same to present as in good psychiatric health." AR 966.

Dr. Levy also found "no abnormalities in her perceptual processes, no disorders in her thought processes, no reports of any but what seem well within the normal human range in reaction to this difficult, chronic, unexplained interruption of her life." AR 968.

Notably, Dr. Levy made no psychiatric diagnoses on Axis I (psychological diagnostic categories) and Axis II (personality disorders and mental retardation). AR 968. As noted above, psychiatrist Dr. Jone made the same finding. Although Defendant maintains that a diagnosis is not necessary to apply the limitation, the absence of diagnoses is significant.

Defendant argues that the *Okuno* Court did not automatically award benefits as a remedy. Here, however, an award of benefits is the appropriate remedy. Both Dr. Allen and Dr. Levy concluded that Brende could not perform her own occupation. Dr. Levy further concluded that she was not psychiatrically impaired. Even Dr. Kaplan limited Brende to sedentary work based on physical limitations. Defendant's final denial letter nevertheless relied on the policy's limitation and summarily dismissed multiple physicians' physical limitations. These errors warrant an award of benefits.

There are several indictors that Defendant's decision was motivated by its financial interests. Significantly, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, such as when the administrator both determines eligibility and pays out benefits, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 607 (6th Cir. 2016) *citing to Firestone Tire & Rubber Co. v.*

*Bruch*, 489 U.S. 101, 115 (1989) (internal quotations omitted). One such indicator was Defendant's false assertion to Dr. Bellino that it had already adjudicated Brende's claim within the limitation. AR 1006. Defendant then relied on Dr. Bellino's opinion that a mental or nervous disorder was "plausible" in terminating Brende's benefits. Dr. Levy later remarked that Dr. Bellino's opinion was searching for a psychiatric diagnosis not present in the records. This is exacerbated by the fact that Defendant failed to acknowledge or comment on psychiatrist Dr. Jones opinion that Brende did not need psychiatric care. Finally, Defendant's initial approval and later termination of benefits – despite no change in physical conditions and limitations and no new psychiatric indication – suggests that it acted out of its financial interest.

**D. Decisions from courts applying *Okuno* support a finding of abuse of discretion.**

Several courts have applied the Sixth Circuit's holdings in *Okuno*. These courts' decisions have addressed a range of subjects relevant to ERISA disability cases involving mental health impairments. These cases support Brende's terminal argument that Defendant acted arbitrarily and capriciously in terminating benefits.

In *Jarillo v. Reliance Standard Life Ins. Co.*, No. 15CV2677-MMA (BLM), 2017 WL 1400006 (S.D. Cal. Apr. 19, 2017), the court made five findings that are instructive here. First, citing *Okuno*, the court concluded that Reliance bore the burden of demonstrating that the mental or nervous disorder limitation applied. *Id*. at * 10. Second, it found "it troubling that Reliance based its final denial of Plaintiff's LTD benefits on the mental disorder limitation in the absence of a formal psychological diagnosis." *Id*. at * 11. Third, it held that "the mental disorder limitation does not apply because Plaintiff did not receive a formal diagnosis of a mental disorder." *Id*. at * 14.

10

Fourth, the *Jarillo* court held that the limitation does not apply to mental health impairments resulting from physical disorders. "pursuant to the doctrine of *contra proferentem*, the Court is required to adopt the reasonable interpretation Plaintiff advances—that the phrase mental or nervous disorders does not include mental conditions arising from physical impairments." *Id.* * 12. Admittedly, this holding was a direct consequence of the court's application of a de novo standard of review. Nevertheless, insofar as the record here reflects that Defendant's conflict of interest warrants de novo review, *Jarillo* is persuasive authority that Defendant erred in applying the limitation. After all, Dr. Levy unambiguously concluded that psychotherapy was indicated only because of the frustration caused by her puzzling neurological condition. AR 970-971.

Fifth, the court ordered Reliance to "reinstate Plaintiff's monthly disability benefits retroactive to its denial of benefits, along with prejudgment interest. Plaintiff may also be entitled to an award of reasonable attorneys' fees and costs" *Id.* at * 14.

Moreover, in *Chamness v. Liberty Life Assurance Co. of Boston*, No. 1:13-CV-301, 2017 WL 631601 at *7 (W.D. Mich. Feb. 16, 2017), the court reflected on *Okuno*'s effect on cases involving a mental health component. Although it did not discuss the "but for" test, it did scrutinize a claim administrator's reliance on a file review. The court emphasized that "[f]ile reviews are particularly 'questionable as a basis' for an administrator's determination to deny benefits where the claim, as here, involves a mental illness component. [. . .] Accurately assessing the mental health of an individual, therefore, generally requires interviewing the patient and spending time with the patient,' such that a purely record review will often be inadequate where a disability claim

11

includes a mental component." The court's analysis in *Chamness* is significant in light of Defendant's almost complete reliance on Dr. Bellino's file review in rendering its initial determination to terminate Brende's benefits.

This error is magnified by the two facts. First, Defendant misled Dr. Bellino by stating that it had already adjudicated Brende's claim within the limitation. Second, Dr. Bellino was not a psychiatrist. Indeed, a file review of a case involving a mental health component is problematic even if it is a psychiatrist conducting the review: "File reviews by psychiatrists are viewed as particularly suspect since psychiatrists usually treat subjective, instead of objective, symptoms." *Id*. citing to *Brainard v. Liberty Live Assurance Co. of Boston*, 173 F.Supp.3d 482, 488 (E.D. Ky. 2016).

The Sixth Circuit's decision in *Okuno*, as well as cases recently citing thereto, support a finding in Brende's favor. Defendant failed to properly apply the "but for" test and committed both procedural and substantive errors indicative of a conflict of interest. In so doing, Defendant abused its discretion in terminating benefits.

                      Respectfully submitted,

                      BURNETT & DRISKILL, Attorneys
                   By: /s/ Kyle H. Sciolaro
                      Kyle H. Scilaro #24991
                      /s/ Roger M. Driskill
                      Roger M. Driskill  #70782
                      19 North Water Street
                      Liberty, Missouri  64068
                      816.781.4836
                      816.792.3634 - facsimile
                      rmdriskill@ss-disability.com
                      ksciolaro@ss-disability.com
                      ATTORNEYS FOR BRENDE