## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KELLY DEAN BRENDE,

      **Plaintiff,**

      **v.**

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

      **Defendant.**

Case No. 15-9711-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Kelly Dean Brende brings the present action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq., alleging that Defendant Reliance Standard Life Insurance Company ("Reliance") improperly denied her long term disability benefits under an employer provided disability plan. This matter is before the Court on the parties' Cross-Motions for Summary Judgment (Docs. 23, 25). Defendant also filed a Motion in Limine (Doc. 23). For the reasons explained in detail below, both parties' motions are denied and the claim is remanded for further administrative review.

## I.      Standards of Review

### A.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[1] In applying this standard, the Court views the evidence and all reasonable inferences therefrom

---

[1] Fed. R. Civ. P. 56(a).

in the light most favorable to the nonmoving party.[2]  This legal standard does not change where, as here, the Court is ruling on cross-motions for summary judgment, as each party has the burden to establish its entitlement to judgment as a matter of law.[3]

### B.  Review of Adverse Benefits Determination

As this Court has acknowledged, however, summary judgment standards are not totally suited to the Court's review of the administrative record in an ERISA action.[4]  In this case, the parties do not ask the Court to determine whether material issues of fact remain for trial, but instead seek review of an administrative record to determine whether Reliance reasonably denied Plaintiff's claim.[5]  The Court's task is to act "as an appellate court and evaluate[ ] the reasonableness of a plan administrator of fiduciary's decision based on the evidence contained in the administrative record."[6]

A district court reviews denial of ERISA benefits under a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[7]  Where, as here, the plan administrator has discretion to determine eligibility for benefits and to construe plan terms, then the court reviews

---

[2]*City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3]*Alt. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[4]*See Meyer v. UNUM Life Ins. Co. of Am.*, 96 F. Supp. 2d 1234, 1244 (D. Kan. 2015); *McNeal v. Frontier AG, Inc.*, 998 F. Supp. 2d 1037, 1040–41 (D. Kan. 2014).

[5]*See id.*

[6]*McNeal*, 998 F. Supp. 2d at 1040 (citing, *inter alia*, *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579 & n.31 (10th Cir. 1994)).

[7]*LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

the administrator's actions under a "deferential standard of review."[8]  Under this standard, a

court reviews the administrator's decision for abuse of discretion.[9]

The Tenth Circuit "treats the abuse-of-discretion standard and the arbitrary-and-

capricious standard as 'interchangable in this context,' and 'applies an arbitrary and capricious

standard to a plan administrator's actions.'"[10]  Under this standard, "review is limited to

determining whether the interpretation of the plan was reasonable and made in good faith."[11]

The plan administrator's decision will be upheld "so long as it is predicated on a reasoned

basis."[12]  "[T]here is no requirement that the basis relied upon be the only logical one or even the

superlative one."[13]  Rather, courts ask only "whether the administrator's decision resides

somewhere on a continuum of reasonableness—even if on the low end."[14]  "Consequently, the

Tenth Circuit has observed that the arbitrary and capricious standard is a difficult one for a

claimant to overcome."[15]

The parties agree that the arbitrary-and-capricious standard applies to the benefits

determination at issue in this case.  However, in *Metropolitan Life Insurance Co. v. Glenn,*[16] the

Supreme Court held that when an ERISA fiduciary is responsible for making benefits

determinations and is also the party responsible for paying claims, an inherent, dual-role conflict

---

[8]*Metro Life Ins. Co. v. Glenn*, 544 U.S. 105, 111 (2008) (quoting *Firestone*, 489 U.S. at 111).

[9]*See Foster v. PPG Indus., Inc.*, 693 F.3d 1226, 1231 (10th Cir. 2012).

[10]*Id.* at 1231–32 (quoting *Fought v. UNUM Life Ins. Co. of Am.*, 379 F.3d 997, 1003 & n.1 (10th Cir. 2004) (per curiam), *abrogated on other grounds by Glenn*, 544 U.S. at 118)).

[11]*Euguene  S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1134 (10th Cir. 2011).

[12]*Adamson v. Unum Life Ins. Co. of Am.,* 455 F.3d 1209, 1212 (10th Cir. 2006).

[13]*Id.*

[14]*Id.* (internal quotation marks and citations omitted).

[15]*Berges v. Standard Ins. Co.,* 704 F. Supp. 2d 1149, 1174  (D. Kan. 2010) (quoting *Nance v. Sun Life Assurance Co. of Can.,* 294 F.3d 1263, 1269 (10th Cir. 2002)).

[16]554 U.S. 105 (2008).

of interest exists.[17]  The presence of such a conflict does not alter the standard of review, but courts consider the conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits.[18]  The significance of the factor will depend on the circumstances of the particular case.[19]  *Glenn* stated that:

> [t]he conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in the firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.[20]

Here, the parties do not dispute that the Plan grants the Plan Administrator discretion to determine eligibility for benefits, including resolving factual disputes and interpreting and enforcing Plan provisions.  Reliance contends that its review process provided Brende multiple opportunities to address all substantive issues: 1) Brende's appeal of the decision was submitted to a separate and independent Reliance unit that was in no way involved in the initial claim determination as is required by ERISA; 2) Reliance obtained an independent peer review; 3) Reliance obtained two independent medical examinations; and 4) Reliance provided Brende an opportunity to comment on the independent medical examination reports prior to making its determination.  Brende does not argue that Reliance's administrative review involved irregularities that cast doubt on the integrity of its claims procedures.  The circumstances of the

---

[17]*Id.* at 114.

[18]*Id.* at 105.

[19]*Id.*

[20]*Id.* at 117 (citations omitted).

case do not suggest that Reliance's conflict of interest impacted the benefits determination and the Court finds that the conflict carries limited weight.

In ERISA cases seeking review of a denial of ERISA benefits, the Court's review is "limited to the administrative record," *i.e.*, the materials compiled by the ERISA plan's administrator in the course of making its decision.[21]  Thus, any evidence presented to the Court on summary judgment motions in this type of ERISA case is limited to the administrative record. At the same time, the Court notes that its review of the facts is not necessarily limited to the facts that the parties set forth in their briefs as the "uncontroverted facts."  In reviewing the administrative record in this case to determine whether Defendant's decision to deny Plaintiff benefits was arbitrary and capricious, the Court should consider whether "substantial evidence" supported the decision.[22]  Whether evidence is "substantial" must be "evaluated against the backdrop of the administrative record as a whole."[23]  Thus, in ruling on the parties' summary judgment motions, the Court must evaluate the entire administrative record and not just those particular facts the parties reference from the administrative record in their respective briefs.

## II.    Statement of Facts

### *Plan Terms*

Kelly Dean Brende has been employed as a partner with the law firm Swanson Midgley since 2005.  The firm provided its employees with a long term disability ("LTD") insurance policy, Policy Number LTD115875 (the "Policy").  Reliance administers the Policy and is the claims review fiduciary.

---

[21]*Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) (citation omitted).

[22]*Hancock v. Metro Life Ins.Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009).

[23]*Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (citation omitted).

Brende was classified as a Class 1 employee, for which the Policy defines "Totally Disabled" "as the result of an Injury or Sickness, during the Elimination Period and thereafter for which a Monthly Benefit is payable, an Insured cannot perform the material and substantial duties of his/her Regular Occupation."[24] The Policy defines "Sickness" to mean "illness or disease causing Total Disability which begins while insurance coverage is in effect for the Insured."[25] The "Elimination Period" is a period of 90 consecutive days that begins on the first day of Total Disability and for which no benefit is payable.[26] "Material and substantial duties" is not defined in the Policy. "Regular Occupation" is defined as "the occupation the insured is routinely performing when Total Disability begins . . . as it is normally performed in the normal economy and not the unique duties performed for a specific employer or in a specific locale."[27]

When a Total Disability is "caused by or contributed to by mental or nervous disorders," then monthly benefits "will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months."[28] "Mental or Nervous Disorders" include, but are not limited to, depressive and anxiety disorders.[29]

The Policy contains the following discretionary language:

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.[30]

---

[24]Administrative Redord ("AR") 12.

[25]*Id.*

[26]AR 9, 11.

[27]AR 11.

[28]AR 24.

[29]*Id.*

[30]AR 16.

Monthly Benefits are payable if an Insured, among other things, "submit[s] satisfactory proof of Total Disability to [Reliance]."[31]

### Plaintiff's Medical Treatment

On September 11, 2012, Plaintiff noticed that the toes on her left foot were numb, and initially attributed the sensation to a pinched nerve from running ten miles the previous day. The following day she became dizzy and experienced the numbing and tingling had spread to her left side.[32] Brende was evaluated at St. Luke's Emergency Department on September 12, 2012, after complaining of a headache and dizziness.[33] A CT study of Brende's brain that day revealed, "Negative noncontrast CT of the brain"; a MRA and MRI of her head was "unremarkable; a MRA of her neck stated: "Impression: No evidence of carotid or vertebral artery stenosis."[34] Brende did not return to work, and her last day of full-time employment was September 12, 2012.

On September 14, 2012, Brende was evaluated by Jennifer Bernard of St. Luke's Health System for an emergency room follow-up visit pertaining to her complaints of a headache; Dr. Bernard expressed concern that Brende may have experienced a migraine headache.[35] An October 4, 2012, MRI of Brende's cervical spine performed at St. Luke's revealed no disc bulge or herniation, nor was there evidence of spinal canal stenosis, neural foraminal narrowing,

---

[31]AR 20.

[32]AR 833.

[33]AR 792–97.

[34]AR 814–19.

[35]AR 785–86.

masses, or lesions.[36]  An October 26, 2012 MRI of Brende's head was unchanged and unremarkable.[37]

Brende then consulted Dr. Arthur Allen, a neurologist, on November 2, 2012.  In his treatment notes, Brende reported reduced strength and stamina; on examination, her strength was normal in both her upper and lower extremities.[38]  Dr. Allen stated that he "[c]annot identify a lesion in the lower brainstem or upper cervical cord that would explain her subjective sensorimotor symptomatology.  The only objective findings include altered responses to pinprick and temperature over the left scalp, thoracic region, arm and leg."[39]  Dr. Allen referred Brende to the Mayo Clinic as he could not identify the cause of her symptoms, which had then been present for over fifty days.[40]

In November 2012, Brende was evaluated by Dr. Joseph Matsumoto of the Mayo Clinic. After "review[ing] all her films as noted, [he saw] no abnormalities," and his diagnosis was numbness and weakness of an uncertain cause.[41]  In a December 7, 2012 letter to Dr. Allen, Dr. Matsumoto wrote that he was unable to determine the cause of Brende's numbness and weakness, and noted that the tests performed on her were normal, concluding:

> I discussed with the patient that we have not found anything ominous.  I told her the good news is that after such an extensive set of testing as has been performed by Dr. Allen in Kansas City and added to by our workup that it seems unlikely that she has any severe organic problem causing her numbness.  I think this is very reassuring.  I will write her again after I get the trigeminal blink reflex.[42]

---

[36]AR 821–22.

[37]AR 812–13.

[38]AR 806–11.

[39]AR 809.

[40]*Id.*

[41]AR 780–82.

[42]AR 782.

In an addendum to the report, Dr. Matsumoto noted that the blink reflex text results were normal.[43]

On December 21, 2012, Dr. Allen completed the attending physician portion of the disability claim application, stating that Brende experienced numbness and tingling in her left arm and leg, dizziness, unable to sit or drive more than one to three hours, unable to walk or stand at all, and unable to work at a sedentary level.[44]  He responded that Brende's ability to perform "complex and varied tasks" was "moderately limited."[45]

On January 16, 2013, Dr. Jennifer Bernard evaluated Brende at St. Luke's for "multiple complaints," including severe dizziness, left upper and lower extremity pain, headaches, fatigue and numbness that Brende characterized as "debilitating."[46]  Following her examination, Dr. Bernard wrote that all tests were normal except the history of present illness as reported by Brende.[47]  She prescribed an anti-inflammatory drug, anti-migraine medication, and an opioid pain medication.[48]  At a subsequent examination on February 13, 2013, Dr. Bernard reported normal findings, despite Brende's continued complaints of headaches, numbness, difficulty focusing, and "periods where she can't do anything."[49]

At a follow-up examination on March 13, 2013, Dr. Bernard recorded Brende's complaints, including upper extremity weakness, dizziness, and difficulty focusing.[50]  After a

---

[43]*Id.*

[44]AR 764–65.

[45]AR 765.

[46]AR 640.

[47]*Id.*

[48]AR 641–42.

[49]AR 643.

[50]AR 645.

physical examination, Dr. Bernard reported normal findings, including no muscle weakness.[51]

She recommended a prescription for the antidepressant Lexapro or Celexa, "since stress makes

symptoms worse," but Brende refused medication at that time.[52]

On March 28, 2013, Brende was evaluated by Dr. Allen for complaints of numbness,

tingling, pressure, and weakness on her left side.[53]  Dr. Allen reported that the cause of Brende's

complaints remained "unclear."[54]

On June 27, 2013, Brende was seen by Dr. Jeanne Drisko at the University of Kansas

Medical Center Integrative Health Department.[55]  Dr. Drisko noted the stressful year Brende had

leading up to the onset of her health issues, stating "[i]t is very likely that there was some sort of

a physical crash and hypothalamic-pituitary-adrenal axis dysfunction is strongly suspected."[56]

Dr. Drisko suggested further testing to evaluate Brende's neurotransmitter levels and adrenal

function, as well as an EEG based neuro map to look at the possibility of a right-sided

abnormality or the possibility of seizure activity, given Brende's description of her numbness

and tingling sensations along the left side of her body.[57]

Brende's symptoms did not abate, and she continued to meet with Dr. Allen and Dr.

Drisko at regular intervals throughout 2013 and 2014.  On August 9, 2013, Dr. Allen evaluated

Brende.[58]  After summarizing her complaints, he noted that Brende had withdrawn from her

church and involvement in parent activities at her childrens' school and that she was unable to

---

[51]AR 646.

[52]*Id.*

[53]AR 503.

[54]AR 506.

[55]AR 534.

[56]AR 537.

[57]*Id.*

[58]AR 499.

work.[59]  After a physical examination of Brende, he noted her muscular development, strength, and gross fine motor coordination were normal, and that she reported that even the most sedentary of activities drained her of energy.[60]

Brende was evaluated by Dr. Drisko on August 23, 2013, who noted that Brende had been evaluated at the Mayo Clinic and that the "test results did not help in establishing a care plan and there were no recommendations that could be made."[61]  She further noted that Dr. Allen is considering a PET scan of Brende's brain.[62]  That brain scan on September 17, 2013 provided "no evidence of stroke or neurodegenerative disease."[63]

On September 27, 2013, the Social Security Administration denied Brende's claim for Social Security disability benefits.[64]

On October 28, 2013, Dr. Allen completed an "Attending Physician's Statement" for Reliance, and reported a diagnosis of numbness and tingling in Brende's left aft and leg and a brain stem lesion.[65]  Dr. Allen stated Brende's prognosis was "stable," and when asked about her ability to function in areas of daily activity and ability to return to work, selected as the best answer option: "[t]here is a degree of neurological impairment, but there is ability to carry out most of activities of daily living as well as pre-morbid state."[66]

Dr. Allen completed another Physician's Statement on November 13, 2013, which reported Brende's diagnosis as fatigue, headache, and left hemisensorimotor dysfunction, and

---

[59]AR 500.

[60]AR 501.

[61]AR 538.

[62]*Id.*

[63]AR 508–09.

[64]AR 623–26.

[65]AR 496.

[66]AR 497.

experiencing dizziness, disequilibrium, photophobia, and sonophobia.[67] Dr. Allen indicated that

Brende was irritable and depressed, and that her prognosis was "guarded" as there was no

specific treatment because the etiology of her complaints was unknown.[68] When presented with

the same multiple choice options regarding Brende's ability to function that appeared in the form

he completed the month prior, Dr. Allen selected as the best answer: "[d]aily activities need

some supervision and/or direction," and elaborated that Brende cannot practice law.[69]

Brende saw Dr. Drisko on November 27, 2013.[70] Dr. Drisko noted that Brende's

complaints persisted and that she "[c]ontinues with severe malaise and nonrestorative sleep.

Unable to attend to activities of daily living."[71] Dr. Drisko further noted that Brende "had a

history of situational depression and anxiety related to her illness, but no lifelong history of

either."[72]

Brende returned to Dr. Drisko in January 2014, for a follow-up visit after a gallbladder

procedure and to discuss her future plans.[73] Dr. Drisko stated that Brende reported that she was

"feeling somewhat better," with improved energy and modest improvement in daily activities.[74]

Brende continues to have left-side facial weakness and numbness "if she over functions and gets

tired."[75]

---

[67]AR 529.

[68]AR 530.

[69]*Id.*

[70]AR 1137.

[71]AR 1138.

[72]AR 1141.

[73]AR 1149.

[74]*Id.*

[75]*Id.*

***Reliance's Finding of Disability and Review of Benefits***

On February 22, 2013, Reliance approved Brende's application for LTD benefits, and paid benefits retroactively, beginning December 10, 2012.[76]

On May 8, 2013, Barbara Finnegan, a nurse employed by Reliance, reviewed Brende's medical records and noted the normal scans and laboratory studies.[77] Finnegan also noted Brende's positive clinical examination based on her self-reported complaints before concluding that Brende lacked consistent work function.[78]

On December 31, 2013, Nurse Finnegan reviewed Brende's file to assess her continuing eligibility for LTD benefits. Finnegan found that "[t]here is a degree of neurological impairment, but there is ability to carry out most activities of daily living as well as pre-morbid state. Lack of consistent work function remains supported."[79] Finnegan determined that additional medical records were necessary, especially Dr. Allen's report of a brain lesion.[80] Reliance approved Brende's benefits through July 1, 2014.

On June 5, 2014, Dorothy McGarry, R.N., reviewed Brende's updated file to assess her continuing eligibility for LTD benefits. After considering Brende's activity level and evidence of stress factors before determining that the cause of Brende's symptoms remained unclear, McGarry concluded that "lack of consistent work function is supported ongoing," and opined that there "appears to be a psychogenic contribution to her impairment since the date of loss, and ongoing."[81]

---

[76]AR 351–53.

[77]AR 168.

[78]*Id.*

[79]AR 169.

[80]*Id.*

[81]AR 170–71.

On July 14, 2014, at Reliance's request, Dr. Francis Bellino, a board certified family physician, reviewed Brende's medical records. Dr. Bellino noted the absence of any diagnosis for Brende's symptoms and the fact that her physician related her symptoms to stress, concluding that:

> There is no support in physical findings for her complaints of weakness. The symptoms with which Ms. Brende presented would not be impairing to any occupation that did not require vigorous physical activity. There is no manner in which the symptoms of numbness and tingling would impair any level of physical activity. The level of activities described by Ms. Brende would not be consistent with impairment due to fatigue from a non-physically vigorous occupation.[82]

Relative to Brende's cognitive status, Dr. Bellino noted:

> There is no alleged cognitive impairment in the file. Ms. Brende described that she was able to work with a client for 1.5 hours in August 2013, since she was the only member of the law firm who had past knowledge. This would demonstrate a high level of cognitive function.
>
> Fatigue is alleged to be impairing; however, the described activities are inconsistent with both the opined restrictions/limitations (Allen) and impairment from a non-physically vigorous occupation.[83]

Dr. Bellino also stated that it was "plausible that [a] mental nervous condition is the underlying cause of her condition," and expressed doubt about Dr. Drisko's methods.[84]

### *Initial Denial of Disability*

On October 20, 2014, Reliance notified Brende that it would discontinue benefits effective December 10, 2014.[85] Relying in part on Nurse McGarry's report and Dr. Bellino's assessment, Reliance determined Brende's "Total Disability is caused by or

---

[82]AR 1047.

[83]AR 1048.

[84]*Id.*

[85]AR 456–58.

contributed to by a Self-reported disorder."[86]  Reliance cited the Mental or Nervous

Disorders policy provision with a maximum duration of benefits of twenty-four months.[87]

Reliance explained its determination by citing to Nurse McGarry's "medical review" of

her file wherein she concluded Brende's condition has a "psychogenic contribution," and

her symptoms were related to a "stressful year."[88] After Nurse McGarry's review,

Reliance explained it had Dr. Bellino evaluate her file to determine if her diagnosis had

any physical impairment in addition to her "mental/nervous disorder."[89]  Reliance stated

that Dr. Bellino indicated that Dr. Allen's assessment that her strength and stamina are

unable to sustain a sedentary activity is inconsistent with actual activity; that fatigue is

reported but vague; that in view of the lack of anatomic or physiological explanation for

her symptoms, it is plausible that a mental or nervous condition is the underlying clause;

and there is no support in physical findings for Brende's complaints of weakness.[90]

### Brende's Appeal

Brende timely appealed Reliance's initial denial, disputing Reliance's determination that

her claimed disability was caused or contributed to by a mental or nervous disorder, as well as

taking issue with Dr. Bellino's report.[91]  Brende stressed that no mental or nervous disorder was

diagnosed by Nurse McGarry or Dr. Bellino, as required by the cited Policy provision.[92]  Brende

provided Reliance a psychiatric evaluation report from Dr. Scott Jones, who conducted a

---

[86]AR 456.

[87]AR 456–57.

[88]AR 457.

[89]*Id.*

[90]*Id.*

[91]AR 1020–25.

[92]AR 1021.

psychological evaluation of Brende on February 17, 19, and 20, 2014.[93]  Dr. Jones concluded that Brende had "no indication for any psychiatric care," and "she is psychologically doing very well managing her stressful medical situation."[94]  Brende's GAF score was 80, and Dr. Scott recommended continued neurological treatment with Dr. Allen.[95]

On April 15, 2015, at Reliance's direction, Dr. Jeffery Kaplan reviewed Brende's medical records and performed an independent medical examination.[96]  Based on the medical records, Dr. Kaplan identified as the conditions impacting Brende's status: (1) indeterminate left-sided weakness and numbness, (2) headaches with some aspects consistent with migraine, (3) dizziness and (4) skin sensitivity possibly consistent with allodynia [fibromyalgia].[97]  Dr. Kaplan found no medical data during his examination that would substantiate the conditions, but also found no evidence of malingering.[98]  Dr. Kaplan found one abnormality upon examination that correlated with Brende's complaints:  sensory changes on the left side of her body.[99]  He noted that "[i]t is important to note that these sensory changes are subjective, and therefore cannot be reliably confirmed."[100]  He further noted that "I believe this patient has an underlying impairment due to skin sensitivity, headaches, dizziness, and left-sided numbness.  This is based solely on symptoms and subjective examination findings.  Even if a substantial portion of her symptoms are psychological in etiology, they are still causing her impairment."[101]  He opined that this

---

[93]AR 1028.

[94]AR 1029–30.

[95]AR 1029.

[96]AR 952.

[97]AR 955.

[98]AR 955–56.

[99]AR 956.

[100]*Id.*

[101]*Id.*

impairment does not prevent Brende from doing "sedentary" work.[102]  Specifically, Dr. Kaplan

found that Brende was capable of frequent sitting and occasional standing and walking consistent

with sedentary level work.[103]

On April 29, 2015, chiropractor Dr. Koko Husain provided to Reliance her written

opinion of Brende's condition.[104]  Dr. Husain opined that Brende had brachial neuritis, thoracic

outlet aggravation, and possibly a subtle form of Guillain-Barre Syndrome.  Dr. Husain

commented on Brende's blood tests that displayed a mutation causing decreased methylation,

anemia, vitamin deficiencies, and possible adrenal fatigue.

On May 5, 2015, at Reliance's direction, psychiatrist Dr. Edwin Levy performed an

independent psychiatric examination of Brende and completed a psychiatric assessment form.[105]

In a narrative report dated May 9, 2015, Dr. Levy discussed the medical records he reviewed and

his examination of Brende, before considering her ability to function in a work environment.[106]

Dr. Levy's diagnosis of Brende stated:

> No diagnosis has been made of the symptom complex presented in 9/12.  I make
> no psychiatric diagnosis at this time. Neither of these statements correlates with
> the clinical findings of her condition.  This seems like an empty conclusion, but I
> think it simply points toward the likelihood of an eventual diagnosis in the
> physical/neurological realm.[107]

With respect to his recommendations for treatment, Dr. Levy went on to state,

> I think the chronicity of her problems has brought things to the point where
> psychotherapy is now indicated.  This is not because she is or has been
> 'psychiatrically sick.' It is because she has been and continues to be heavily

---

[102]*Id.*

[103]AR 957.

[104]AR 979.

[105]AR 960.

[106]AR 963–71.

[107]AR 970.

burdened. It is to keep her going on in healthier ways. It would work best if she could want it, could see it as a growth opportunity. It could not be forced.[108]

With respect to Brende's current psychiatric functional ability in a work environment, Dr. Levy stated,

> With a GAF of 80, limitations of this sort are not expected to be encountered. Her inability to function in a work environment is caused by the undiagnosed syndrome. Judgments regarding work limitation would best be made by her neurologist. However, she is not able to move fast and where she needs to go through complexity after complexity and interruption after interruption.[109]

On May 6, 2015, Dr. Allen provided a letter in which he ruled out migraine headaches, stated that "[t]hough there has been limited improvement in strength and stamina so that she can function some of the time as a homemaker and mother, she has not been able to perform any duties of her previous occupation as an attorney in the area of estate planning and tax law," noted Brende's continued complaints of numbness and tingling of the left arm and leg, and commented that he believed Brende's fatigue and malaise were "the more disabling of the two issues as she lacks strength and stamina and has increased sleep requirement which prevent her from functioning."[110] Dr. Allen stated his diagnoses include: 1) numbness and tingling of the left arm and leg; 2) fatigue/malaise; 3) headache in the back of the head; and 4) dysphagia (trouble swallowing).[111]

On June 16, 2015, Dr. Kaplan was provided the following additional records: Dr. Allen's May 6, 2015 letter; the office visit record from Dr. Allen dated May 4, 2015; and the letter from

---

[108]*Id.*

[109]AR 971.

[110]AR 942–43.

[111]AR 943.

Dr. Husain dated April 29, 2015. Dr. Kaplan stated that review of the records did not change his April 15, 2015 opinion regarding Brende's capabilities.[112]

On July 22, 2015, Brende prepared a response to Dr. Kaplan's report, taking issue with several of his statements.[113] Brende indicated that she did not believe Dr. Kaplan adequately described symptoms she relayed to him during the appointment. She indicated that "briefly resting" entailed resting for one to two hours several times during the day. She also stated Dr. Kaplan misunderstood her regarding the issue of fatigue, specifically, she does not get "sleepy," but rather, her symptoms increase to such a point that she cannot function and she needs to lay down for one to two hours before she has the strength to continue any activities. Finally, Brende relayed she thought there was a "disconnect" with the way Dr. Kaplan presented himself during the appointment and the report he provided, specifically, said he would pray for her and expressed empathy for her condition. In response, Dr. Kaplan prepared an addendum to his report, addressing Brende's statements, indicating her condition had profoundly affected her life, and affirming his opinion that she is capable of only sedentary work.[114]

In July 2015, Reliance hired Marshall Investigative Group to surveil and investigate Brende. On August 6, 2015, at the end of its investigation, the Group provided Reliance with a summary of its observations, including that Brende did not leave her home for the three days for which she was surveilled.[115]

---

[112]AR 928.

[113]AR 919–20.

[114]AR 863–64.

[115]AR 881–93.

***Reliance Upholds Claim Decision***

On September 11, 2015, Reliance issued a letter denying Brende's appeal ("Final Denial Letter").[116] After summarizing her administrative file, Reliance determined that (1) the record no longer supports her claim that the symptoms are disabling; and (2) assuming *arguendo* the Mental and Nervous Disorders policy provision applies to Brende's claim, it prohibits the payment of additional benefits.[117] Reliance went on to state that the evidence did not support a finding of disability based on a psychiatric or physical impairment, suggesting that Brende was never entitled to *any* benefits: "As Ms. Brende is not physically impaired or psychiatrically impaired, and as she received LTD benefits under the Mental or Nervous Disorder provision, it appears [Reliance] has overpaid Ms. Brende LTD benefits."[118]

This cause of action followed.

## III. Discussion

### A. Physical Disability

The parties agree that Plaintiff bears the burden of proving by a preponderance of the evidence that she is totally disabled, and thus entitled to LTD benefits under the terms of the Plan.[119] Reliance argues that there is no objective support for Brende's claims that she lacks the physical ability to perform her sedentary occupation, while Brende argues that Reliance unilaterally and improperly added an objective medical evidence requirement to her burden of proof, and lacked substantial evidence in making its determination that she could perform her Regular Occupation as an attorney.

---

[116]AR 871–79.

[117]AR 877.

[118]*Id.*

[119]*See Swanson v. Unum Life Ins. Co.,* No. 13-4107-JAR, 2015 WL 339313, at *10 (D. Kan. Jan. 26, 2015).

## 1. Objective Evidence

The Plan defines "Total Disability" to mean "that as a result of an Injury or Sickness, during the Elimination Period and thereafter for which a Monthly Benefit is payable, an Insured cannot perform the material and substantial duties of his/her Regular Occupation.[120] The Plan thus defines "disability" not in terms of satisfaction of specific diagnostic criteria or objective medical proof of an illness, but rather in terms of the performance limits a claimant faces in her occupation due to any sickness or injury. Accordingly, Brende must demonstrate by a preponderance of the evidence that she is unable to perform the material and substantial duties of an attorney.

In its Initial Denial Letter, Reliance advised Brende that the documentation provided indicated that her Total Disability is caused by or contributed to by a "Self-reported disorder," specifically, a skin sensation, that is subject to the Mental or Nervous Disorders limitation.[121] Reliance explained that a medical review by a nurse stated that her condition has a "psychogenic contribution" and her symptoms were related to a "stressful year."[122] Reliance had Dr. Bellino evaluate her file to determine if her diagnosis had any physical impairment in addition to her mental/nervous disorder, and he concluded that it is plausible that mental nervous condition is the underlying cause and there is no physical evidence supporting her complaints of weakness. In its Final Denial Letter, Reliance justified its denial in part, because Brende's "[s]ensory change on the left side of her body are subjective and cannot be reliably confirmed. No neurologic disorder has been identified to explain her symptoms."[123]

---

[120]AR 12.

[121]AR 456.

[122]AR 457.

[123]AR 876.

The record in this case indicates Brende suffers from an undiagnosed condition characterized by numbness, dizziness, weakness, and fatigue. Brende's condition appears to share a feature with conditions like fibromyalgia and chronic fatigue syndrome, in that its symptoms are entirely subjective. As this Court previously noted in *Swanson v. Unum Life Insurance Co. of America*, "[s]uch conditions have presented difficulties for insurers and courts evaluating disability claims."[124] "[C]ourts have held that plan administrators may reasonably require objective evidence of the occupational limitations caused by a claimant's condition, even if the condition itself cannot be diagnosed through objective means."[125] Such balancing has resulted in a general rule: "while a plan administrator may not reasonably demand objective medical evidence of a condition that is incapable of objective diagnosis, it may reasonably require objective evidence that a claimant's diagnosed condition renders her unable to perform her occupational duties."[126] Although the Tenth Circuit has not adopted this rule in a published decision, this Court has previously found the rule persuasive and will adopt it in its analysis of this case as well.[127]

As explained in *Swanson*,

This "objective evidence requirement," moreover, does not require claimants to submit evidence that does not exist. Courts have found that objective evidence of occupational limitations may be provided through tests of claimants' physical strength, stamina, or mental ability. Psychiatric evaluations, for example, may show whether claimants struggle to concentrate or interact with others in a positive manner. And courts routinely rely on the results of "functional capacity evaluations" to test a claimant's actual ability to perform physical tasks such as sitting, standing, walking, lifting, and reaching. Because those tests turn not on claimants' reporting of subjective symptoms, but rather on demonstrated ability to perform work-related tasks, they constitute objective evidence of disability.

---

[124]2015 WL 339313, at *9 (citing *Welch v. Unum Life Ins. Co. of Am.,* 382 F.3d 1078, 1087 (10th Cir. 2004)).

[125]*Id.* (collecting cases).

[126]*Id.* (collecting cases).

[127]*Id.*

Defendant was entitled to require such, or similar, objective evidence in this case.[128]

Brende argues that by requiring objective evidence of her symptoms and condition, Reliance imposed an objective medical evidence requirement pursuant to a condition not present in the Policy. Brende focuses on the language in the Final Denial Letter, where Reliance stated "[s]ensory change on the left side of her body are subjective and cannot be reliably confirmed. No neurologic disorder has been identified to explain her symptoms."[129] But this language is cited in isolation; the entire paragraph in the Final Denial letter states:

> Based on a review of Ms. Brende's complete file, we have determined that her physical conditions would not prevent her from performing work function. Ms. Brende is capable of performing her Regular Occupation as an attorney, which is classified as a sedentary exertion level occupation.
>
> In order to qualify for continuing LTD benefits, the medical evidence must show that your client's conditions prevent her from performing her Regular Occupation. You must show that that symptoms from her conditions are in fact disabling, in accord with the terms of the Policy. The record reveals that Ms. Brende has full bulk strength in all 4 extremities with normal tone. Sensory changes on the left side of her body are subjective and cannot be reliably confirmed. No neurologic disorder has been identified to explain her symptoms. The record reveals that Ms. Brende is able to care for her three children, prepare meals, and attend school functions.
>
> Moreover, we note that Ms. Brende's treating neurologist, Dr. Allen, has consistently found Ms. Brende to have full strength and good motor coordination in all extremities.[130]

Thus, under *Swanson,* it was well within Reliance's discretion to require objective evidence that Brende lacked the ability to engage in work as an attorney.

---

[128] *Id.* (internal citations omitted).

[129] AR 876.

[130] AR

### 2. Regular Occupation

Nevertheless, the Court finds that Reliance's decision was unreasonable because it failed to consider Brende's actual job duties in defining her regular occupation. Under the Policy, an insured is disabled when he or she "cannot perform the material and substantial duties of his/her Regular Occupation." "Regular Occupation" is defined as "the occupation the Insured is routinely performing when Total Disability begins. We will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale."[131]

In its Final Denial Letter, Reliance concluded that Brende's limitations and restrictions did not physically preclude her from working as an attorney, which is classified as a sedentary exertion level occupation.[132] Reliance's Occupational Data document specifies the strength requirements for an attorney as "Sedentary. Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time."[133] The Data document also states physical demands include reaching, handling, fingering, talking, hearing, and near acuity.[134] Work situations include dealing with people, influencing people in their opinions, attitudes, and judgments, and making judgments and decisions.[135] Non-physical aptitudes include general learning ability, verbal aptitude and numerical aptitude above the 89th

---

[131]AR 11.

[132]AR 478 (emphasis added).

[133]AR 768.

[134]*Id.*

[135]*Id.*

percentile.[136]  Tasks include conducting research, client contact, preparing written legal argument, preparing for trial, and interpreting law.[137]

When an ERISA plan defines disability in terms of whether a claimant is unable to perform the material functions of his or her job, "it is essential that any rational decision to [deny] disability benefits . . . consider whether the claimant can actually perform [his or her] specific job requirements."[138]  The Tenth Circuit has recognized that a denial of benefits is arbitrary and capricious if premised on medical reports that fail to consider one or more of the claimant's essential job functions.[139]

Accordingly, the Court concludes that Reliance's Final decision to deny Brende LTD benefits was arbitrary and capricious because it addressed only one aspect of her occupation, the general sedentary nature of the work.  Reliance failed to address that at a minimum, the substantial and material duties of an attorney include non-physical tasks, demands, and aptitudes, including research, client contact, and frequent near acuity.  These omissions are troubling, particularly because it was Reliance's own Occupational Data document that specifies these non-physical tasks, which are clearly the focus of Brende's claimed disability.  Indeed, Brende has never denied that she is sometimes capable of normal physical exertion; rather, it is sensory dysfunction, cognitive impairment, fatigue, and malaise that she alleges prevent her from practicing law.

Moreover, the record contains several sources of evidence that concentrate on the non-physical duties required of an attorney.  Over two years of evidence reflect Brende consistently

<hr />

[136]*Id.*

[137]AR 767.

[138]*Miller v. Am. Airlines, Inc.,* 632 F.3d 837, 855 (3d Cir. 2011).

[139]*Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1285 (10th Cir. 2002); *see also McDonough v. Aetna Life Ins. Co.,* 783 F.3d 374, 380 (1st Cir. 2015); *Miller,* 632 F.3d at 854–55; *Elliott v. Metro. Life Ins. Co.,* 473 F.3d 613, 619 (6th Cir. 2006); *Panther v. Sun Life Assur. Co. of Canada*, 464 F. Supp. 2d 1116, 1121 (D. Kan. 2006).

sought treatment for her symptoms. Dr. Allen assessed Brende's limitations, finding a degree of

neurological impairment, that she was moderately limited in her ability to perform complex and

varied tasks, and more specifically, that she cannot practice law. After reviewing the medical

evidence, Dr. Levy interviewed and questioned Brende to assess her functional limitations. In

his evaluation, he identified specific limitations in the process of assessing a GAF score of 80:

> Her inability to function in a work environment is cause by the undiagnosed
> syndrome. Judgments regarding work limitation would be best made by her
> neurologist. However, she is not able to move fast and where she needs to go
> through complexity after complexity and interruption after interruption. . . . The
> patient tires very easily, needs continually to rest after effort in daily life tasks,
> perceives herself as weak, is in several different kinds of pain, including
> paresthesia's, gets dizzy and aches. These greatly limit her ability to do more
> than basic activities of living and much of the care of her children and
> maintaining a relationship with her husband.

Notably, Reliance does not mention Dr. Levy's specific limitations in its Final Denial letter,

despite the fact that he performed an independent medical evaluation at Reliance's behest

By contrast, the reports Reliance relies on describe Brende's job duties as "sedentary,"

and did not discuss the effect of Brende's impairments on the non-physical duties of her

occupation. The fact that Brende can physically perform sedentary work functions, however, is

not sufficient to meet the requirements of the profession. "On this opaque record, there is simply

no way to tell whether the reviewers were applying a correct conception of the [plaintiff's job

duties] . . . or some other conception."[140] Without such information, the Court cannot conclude

that Reliance's denial of benefits is predicated on a reasoned basis.[141]

Having determined that Reliance's denial of LTD benefits was arbitrary and capricious,

the Court considers the proper remedy. Where, as here, a "plan administrator 'fail[s] to make

adequate findings or to explain adequately the grounds of its decision,'" the Tenth Circuit has

---

[140]*McDonough,* 783 F.3d at 380.

[141]*See Caldwell,* 287 F.3d at 1285.

held that ordinarily "the proper remedy 'is to remand the case to the administrator for further findings or explanation.'"[142] "A remand for further action is unnecessary only if the evidence clearly shows that the administrator's actions were arbitrary and capricious, or the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground."[143] The Court concludes that a remand to Reliance is the proper course of action. This is not a case where the evidence is so one-sided as to make a remand unnecessary. Instead, the flaw in Reliance's decision is that it failed to make adequate factual findings regarding Brende's ability to perform the material and substantial duties of her job. The Court "will not substitute [its] judgment for that of [Reliance]."[144]

The case is hereby remanded to Reliance for further proceedings consistent with this opinion. Upon remand to the administrator, Reliance must provide Brende a full and fair review. Reliance must indicate which material and substantial duty or duties of Brende must be unable to perform as an attorney to qualify as totally disabled. This should include the duties and tasks for attorneys set forth in the Occupational Data document beyond the general classification as a sedentary exertion level occupation. If Reliance denies Brende's request for LTD benefits, it must set forth its reasons and rationale, and allow Brende to submit additional evidence supporting her claim for physical disability benefits. After Reliance has provided its rationale and Brende has submitted additional evidence, if any, Reliance should evaluate Brende's claim as it would an appeal from an initial denial of benefits.

---

[142]*DeGrado v. Jefferson Pilot Fin. Ins. Co.,* 451 F.3d 1161, 1175 (10th Cir. 2006) (alterations in original omitted) (quoting *Caldwell,* 287 F.3d at 1288).

[143]*Caldwell,* 287 F.3d at 1289 (internal quotation marks and citation omitted).

[144]*Rekstad v. U.S. Bancorp,* 451 F.3d 1114, 1121 (10th Cir. 2006).

**B. Mental or Nervous Disorder Limitation**

The Mental or Nervous Disorders limitation describes the limitation as applying to a disability "caused by or contributed to by mental or nervous disorders," and defines depressive or anxiety disorder as a mental illness.[145]  Brende claims that Reliance erroneously interpreted the limitation to apply whenever a disability is caused by or contributed to by mental or nervous disorders, regardless of whether a claimant's depression is the result of physical symptoms or where a psychiatric diagnosis has not been made.  Reliance contends that even though Brende has not been diagnosed with a psychiatric condition, it is clear that her psychiatric condition contributes to the symptoms that she claims are disabling.  The Court directed the parties to brief an additional issue regarding this limitation: whether a "but-for" interpretation should apply, that is, where a claimant is disabled by physical conditions alone, then the mere presence of a psychiatric component does not justify application of the twenty-four month limitation.

Here, the meaning of the clause "caused by or contributed to by mental or nervous disorders" is not self-evident.  Other courts have interpreted similar mental illness limitations to require "but-for" causation.  In *Okunov v. Reliance Standard Life Insurance Company*,[146] the Sixth Circuit joined the Third, Fifth, and Ninth Circuits in applying the "but-for inquiry" to the same Mental and Nervous Disorders limitation at issue in this case.[147]  Consistent with the above cases, the Court construes the limitation here as applying only if Brende's mental or nervous disorder was a but-for cause of her disability.  "Thus, an application is not appropriately denied on the basis that a mental or nervous disorder "contributes to" a disabling condition; rather, the

---

[145]AR 24.

[146]836 F.3d 600 (6th Cir. 2016).

[147]*Id.* at 607–09 (citing *George v. Reliance Standard Life Ins. Co.,* 776 F.3d 349, 355–56 & n.9 (5th Cir. 2015); *Mauer v. Reliance Standard Life Ins. Co.,* 500 F. App'x 626, 628 (9th Cir. 2012); *Gunn v. Reliance Standard Life Ins. Co.,* 399 F. App'x 147, 151 (9th Cir. 2010); *Michaels v. The Equitable Life Assurance Soc'y of U.S. Emps., Managers, and Agents Long-Term Disability Plan,* 305 F. App'x 896, 898, 907–08 (3d Cir. 2009)).

effect of an applicant's physical ailments must be considered separately to satisfy the requirement that review be reasoned and deliberate."[148]  In other words, the inquiry is whether, but for Brende's anxiety and depression, would she be able to work as an attorney.

In its supplemental briefing, Reliance urges its review was in accord with this but-for framework, arguing that its consideration of Brende's application fits squarely within the reasoning in *Okuno*.  Reliance claims that when the mental or nervous disorders limitation was applied, it also determined whether Brende remained totally physically disabled.  Brende contends that while the denial letters briefly address Brende's physical capacity, they are insufficient to satisfy the analysis required under *Okuno*.

In its Final Denial Letter, Reliance detailed Brende's medical records before explaining that it "determined that her physical conditions would not prevent her from performing work function."[149]  After stating that "the medical evidence does not support the presence of a neurological condition that would warrant work restrictions and limitations from a physical standpoint," Reliance proceeded to analyze, *arguendo*, that Brende's condition was caused or contributed to by a mental or nervous disorder, and thus the twenty-four month limitation applied.  Reliance then notes that Dr. Levy found Brende was not psychiatrically impaired, and goes so far as to suggest that because Brende is neither physically or psychologically impaired, she was overpaid LTD benefits.  Reliance went on to conclude, "regardless of whether or not Ms. Brende is or is not psychiatrically impaired, the fact remains that Ms. Brende is not impaired from a physical standpoint."[150]  Reliance determined there is no physical disability that entitles Brende to disability benefits separate and apart from her mental or nervous disorder.

---

[148]*Okuno*, 836 F.3d at 609.

[149]AR 478.

[150]AR 480.

Accordingly, the Court concludes that Reliance evaluated Brende's claim consistent with the "but for" test set forth in *Okuno*.

This evaluation, however, was based on the faulty premise that Brende's symptoms did not rise to the level that would prevent her from performing her sedentary occupation, a conclusion the Court found arbitrary and capricious because Reliance did not consider the non-physical/cognitive aspects of Brende's occupation as an attorney. Because the "but for" inquiry to the Mental and Nervous Disorders limitation excludes coverage only when the claimant's physical disability, separate and apart from any mental health related problems, is insufficient to render her totally disabled, any related determination that the exclusion applies necessarily requires a sufficient analysis of that claimed physical disability. Moreover, as Reliance asserts, further consideration of the limitation is unnecessary if Brende is not physically disabled. Thus, on this record, the Court cannot determine whether Reliance's application of the limitation was reasonable. Accordingly, the Court defers ruling on this issue pending Reliance's consideration on remand of whether Brende's physical conditions prevented her from performing her material and substantial duties as an attorney.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Summary Judgment (Doc. 25) and Defendant's Motion for Summary Judgment and Motion in Limine (Doc. 23) are DENIED. The case is remanded to Defendant Reliance for further proceedings consistent with this Opinion.

**IT IS SO ORDERED.**

Dated: <u>September 22, 2017</u>

     S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE