# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KELLY DEAN BRENDE,**<br><br>Plaintiff,<br><br>v.<br><br>**RELIANCE STANDARD LIFE INSURANCE COMPANY,**<br><br>Defendant. | Case No. 15-CV-9711-JAR-TJJ |
| **KELLY DEAN BRENDE,**<br><br>Plaintiff,<br><br>v.<br><br>**RELIANCE STANDARD LIFE INSURANCE COMPANY,**<br><br>Defendant. | Case No. 19-CV-2042-JAR-TJJ |

## MEMORANDUM AND ORDER

Plaintiff Kelly Dean Brende brings the present action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq., alleging that Defendant Reliance Standard Life Insurance Company ("Reliance") improperly denied her long-term disability benefits under an employer provided disability plan.

On September 22, 2017, this Court denied cross-motions for summary judgment and remanded for further administrative proceedings.[1] On January 25, 2019, Brende filed a second

---
[1] Doc. 38.

case, alleging wrongful denial of benefits—as alleged in her original case—as well as breach of fiduciary duty and statutory and regulatory non-compliance. The cases were consolidated for all purposes on April 30, 2019.

This matter is before the Court on Reliance's Motion to Dismiss Counts II–IV (Doc. 49) pursuant to Fed R. Civ. P. 12(b)(6). For the reasons below, the Court grants in part and denies in part Reliance's motion. The Court grants the motion with regard to Count IV and denies the motion with regard to Counts II and III.

**I.     Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[2] and must include "enough facts to state a claim for relief that is plausible on its face."[3] Under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[4] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[5] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[6] Finally, the court must accept the nonmoving party's factual

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[3] *Id*. at 570.

[4] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[6] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

## II. Background

The following facts, relevant to Counts II–IV, are taken from Brende's Complaint in the member case,[12] and are assumed true for purposes of deciding this motion.

Since March 2005, Swanson Midgley, LLC ("Swanson Midgley") employed Brende as a tax attorney. Swanson Midgley sponsored a group welfare benefits plan for its participating employees ("Plan"), for which it was the administrator. At all relevant times, Brende was a covered employee and a Plan participant. Swanson Midgley delegated to Reliance the function

---

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[8] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[9] *Id.* at 678–79.

[10] *Id*. at 679.

[11] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[12] *Brende v. Reliance Standard Life Ins. Co.*, 2:19-cv-2042-JAR-TJJ, Doc. 1.

of issuing the Plan's long-term disability ("LTD") benefit claim determinations, and Reliance's group insurance policy ("Policy") funded the Plan.

On September 11, 2012, Brende ceased working for Swanson Midgley as a result of disabling impairments. She timely and properly submitted a claim for LTD benefits, which was approved on February 22, 2013. On October 20, 2014, Reliance notified Brende that it would not pay benefits beyond December 14, 2014. An appeal followed, which was denied on September 11, 2015. On November 30, 2015, Plaintiff brought suit against Reliance for wrongful denial of benefits. On September 22, 2017, this Court denied cross motions for summary judgment and remanded Brende's claim for further administrative review because Reliance acted arbitrary and capriciously in failing to "consider the non-physical/cognitive aspects of Brende's occupation as an attorney."[13]

On October 30, 2017, Brende underwent a neuropsychological examination by Dr. William Blessing, MD, at the behest of Reliance. The examination was coordinated by Reliance's contracted agent, Dane Street. Neither Reliance nor Street provided Blessing with Brende's job description, list or duties or functions required for an attorney or tax attorney, evidence that Brende had previously submitted on appeal, or reports of Brende's previous evaluators. Blessing issued a report. On November 7, 2017 Reliance sought clarification as to Blessing's finding that Brende was limited in "[p]erforming a variety of duties."[14] On November 10, Reliance received Blessing's amended report in which he indicated that medication and/or behavioral compensation would improve Brende's performance. Minutes later, Reliance received an e-mail with an invoice for the report.

---

[13] Doc. 38 at 30.

[14] Doc. 1 ¶ 59.

On December 6, 2017, Reliance notified Brende in writing that it had upheld its decision terminating her benefits. On December 19, Brende requested from Reliance her updated claim file. On January 8, 2018, Reliance provided Brende's claim file, but that file did not contain the raw data underlying Blessing's testing and examination of Brende. Brende immediately requested Blessing's data, but on the same day, Reliance responded, indicating that it would not be provided.

On January 31, 2018 Brende wrote to Blessing, asking that he provide his data to Dr. Terrie Price, PhD, and Dr. Richard Benson, PhD. That same day, Blessing provided an invoice to Brende's counsel for $307.46, the cost of providing his data. On February 5, 2018, Brende's counsel issued full payment, which was cashed by Blessing's office on February 16. On February 22, Brende's counsel contacted Blessing's office for an update, and a representative indicated she would call back with more information. On February 26, Brende's counsel again followed up with Blessing's office. A representative advised that they would not release the data and directed counsel to Street. No refund was issued for the payment. On February 26 and 27, Brende's counsel called Street, requesting return calls. On February 28, Brende wrote Reliance explaining the events with Blessing's office and Street and renewed her request that Blessing's raw data be conveyed to Price and Benson. On March 1, Reliance indicated that it had contacted Street. On March 8, Brende again wrote to Reliance; on the same day, Reliance responded that "as a courtesy" it had contacted Street but would not provide Blessing's data. On March 15, Brende wrote Reliance and Street, again requesting the data. On March 23, 2018, Street provided the data to Price and Benson.

On July 13, 2018, Brende submitted to Reliance her appeal of its December 2017 decision. That appeal included additional sources of Brende's medical records; a functional

5

capacity evaluation; opinions from Dr. Allen, Dr. Price, and Dr. Benson; clinical research literature; Brende's Social Security disability file; a vocational evaluation; and information regarding counsel's efforts at communicating with Street. Brende's appeal letter also requested information about Reliance's administration and interpretation of the Court's remand order and the personnel responsible for those decisions, or alternatively, if Reliance invoked privilege, Brende sought its privilege log. Brende's appeal letter further noted that Reliance had not identified what she could produce that would satisfy its requirement for objective evidence of her limitations.

On October 12, 2018, Reliance notified Brende in writing that it had upheld its prior decision terminating her benefits. Reliance indicated in a footnote that it attached the evidence that it considered in making its decision, but that evidence was not attached to the decision. In making its October 12 decision, Reliance cited to the opinions of two new medical consultants, a neuropsychologist and neurologist. These consultants did not receive Dr. Blessing's data.

On October 12, 2018, Brende requested from Reliance her updated claim file. On November 21, Brende again requested from Reliance her updated claim file. On December 11, Brende requested her updated claim file for a third time. On December 26, Brende received her updated claim file. The claim file was not complete. It did not contain updated medical evidence or the evidence referenced in the footnote of its October 12, 2018 decision.

**III. Discussion**

Brende asserts four separate counts: Count I for recovery of wrongfully denied benefits; Count II for breach of fiduciary duty, seeking equitable remedies; Count III for statutory and regulatory noncompliance seeking *de novo* review of the disability benefits determination under

6

the plan; and Count IV seeking imposition of a daily penalty for failure to provide requested documents and information. Reliance seeks dismissal of Counts II, III, and IV.

### a. Count II: Breach of Fiduciary Duty

Brende brings a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3), which provides that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.[15]

Brende seeks "other appropriate equitable relief," asserting that Reliance breached its fiduciary duty by: (1) needlessly delaying and obstructing the release of Blessing's data to Price and Benson; (2) influencing Blessing to supplement his report; (3) failing to convey complete and accurate information to Brende; (4) conducting a review that was inconsistent with its own guidelines and procedures; (5) failing to train and supervise employees; (6) using medical and vocational consultants for the purpose of denying benefits and compensating them at rates that did not comport with its duty to defray reasonable expenses; (7) treating Brende's claim disparately from similarly situated claimants; (8) terminating Brende's LTD benefits for the purpose of elevating its financial interests; and (9) failing to discharge its duties solely in the interests of its participants and beneficiaries. Reliance asserts that Plaintiff may not pursue simultaneous claims under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(a)(3).

As Judge Teeter noted in her recent opinion, "[t]he interplay between § [1132](a)(1)(B) and § [1132](a)(3) is the subject of much debate. Courts have grappled with whether ERISA

---

[15] 29 U.S.C. § 1132(a)(3).

permits participants and beneficiaries to seek—in the same action—benefits due under § [1132](a)(1)(B) and equitable relief § [1132](a)(3)."[16]

In *Varity Corp. v. Howe*, the United States Supreme Court recognized:

> [Section 1132(a)(3)] authorizes "*appropriate*" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."[17]

Citing *Varity*, the Tenth Circuit—in an unpublished opinion—held,

> *[C]onsideration* of a claim under 29 U.S.C. 1132(a)(3) is improper when the Class, as here, states a cognizable claim under 29 U.S.C. § 1132(a)(1)(B), a provision which provides adequate relief for alleged class injury. "[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'." Dismissal of the § 1132(a)(3) claim was proper as a matter of law.[18]

Additionally, in *CIGNA Corp. v. Amara*, the Supreme Court addressed the equitable relief available under § 1132(a)(3), holding that "the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief."[19] The court remanded to the district court to consider what equitable relief was authorized under § 1132(a)(3).[20]

---

[16] *Shore v. Procter & Gamble Health & Long-Term Disability Plan*, No. 18-2294-HLT-JPO, 2018 WL 5045193, at *3 (D. Kan. Oct. 17, 2018).

[17] 516 U.S. 489, 515 (1996) (internal citations removed) (emphasis in original).

[18] *Lefler v. United Healthcare of Utah, Inc.*, 72 F. App'x 818, 826 (10th Cir. 2003) (citing *Varity*, 516 U.S. at 515) (emphasis added).

[19] 563 U.S. 421, 441 (2011).

[20] *Id*. at 442–45. Notably, in *Amara*, the claimants did not have a viable claim under § 1132(a)(1)(B). *Id*. at 438.

Courts in the Tenth Circuit have inconsistently applied *Varity, Amara*, and *Lefler*, some dismissing § 1132(a)(3) claims through a motion to dismiss and others resolving the claims as a matter of law or on the merits at summary judgment.[21] While the exact allegations differ slightly under the circumstances of each case, many allege breaches of fiduciary duties based on misrepresentations and/or detrimental reliance,[22] failure to follow procedures,[23] or lack of full disclosure,[24] similar to the claims alleged here.

Circuit courts also vary in how they view this interplay. In an *en banc* opinion—accompanied by two concurrences and a dissent—the Sixth Circuit reversed both the district court and the original appellate panel, holding that the district court's award of an equitable remedy pursuant to § 1132(a)(3) was improper.[25] The majority held that "a claimant cannot *pursue* a breach-of-fiduciary-duty claim under § [1132](a)(3) based solely on an arbitrary and capricious denial of benefits where the § [1132](a)(1)(B) remedy is adequate to make the claimant whole."[26] The court explained,

> A claimant can *pursue* a breach-of-fiduciary-duty *claim* under § [1132](a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § [1132](a)(1)(B), only where the breach of fiduciary duty claim is based on an injury separate and distinct from the denial of benefits or where the remedy

---

[21] *See, e.g.*, *Shore*, 2018 WL 5045193 (denying dismissal of 29 U.S.C. § 1132(a)(3) claim); *Holbrooks v. Sun Life Assur. Co. of Canada*, No. 11-1383-JTM, 2012 WL 2449850 (D. Kan. June 26, 2012) (dismissing 29 U.S.C. § 1132(a)(3) claim as duplicative because the plaintiff had stated a cognizable claim under § 1132(a)(1)(B)); *Scott v. Union Sec. Ins. Co.*, No. 17-2686-JWL, 2019 WL 451189 (D. Kan. Feb. 5, 2019) (granting summary judgment as to 29 U.S.C. § 1132(a)(3) claim on the merits); *Sliwinski v. Aetna Life Ins. Co.*, No. 17-CV-01528-RM-MEH, 2017 WL 4616599, at *4 (D. Colo. Oct. 16, 2017), report and recommendation adopted, No. 17-CV-01528-RM-MEH, 2018 WL 4697310 (D. Colo. Mar. 2, 2018) (dismissing 29 U.S.C. § 1132(a)(3) as duplicative and rejecting a theory of alternative pleading); *Rutherford v. Hartford Life & Accident Ins. Co.*, No. 15-CV-0332 SMV/SCY, 2015 WL 13651178, at *8 (D.N.M. Sept. 14, 2015) (dismissing 29 U.S.C. § 1132(a)(3) as duplicative).

[22] *See Rutherford*, 2015 WL 13651178, at *7; *Scott*, 2019 WL 451189, at *7.

[23] See *Rutherford*, 2015 WL 13651178, at *7, *Shore*, 2018 WL 5045193, at *2.

[24] See *Holbrooks*, 2012 WL 2449850, at *1.

[25] *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364 (6th Cir. 2015).

[26] *See id.* at 371 (emphasis added).

> afforded by Congress under § [1132](a)(1)(B) is otherwise shown
> to be inadequate.[27]

The majority, citing *Varity*, emphasized that ERISA remedies are concerned with the "adequacy of relief to redress the claimant's injury, not the nature of the defendant's wrongdoing."[28] Notably, the alleged fiduciary breaches in *Rochow* included findings that the defendant "engaged in deliberate and willful wrongful acts, created non-existent insurance policy requirements, concocted a knowingly false rationale for its second denial of benefits, closed the administrative record without medical input or evidence, and acted in bad faith."[29] The dissent argued that these breaches constituted separate injuries for which separate remedies were required to make the plaintiff whole for the defendant's ERISA violations.[30]

Conversely, the Second Circuit held that a district court prematurely dismissed a claim under § 1132(a)(3), finding that "'*Varity Corp.* did not eliminate a private *cause of action* for breach of fiduciary duty when another potential remedy is available.' Instead, we have instructed, if a plaintiff 'succeed[s] on both claims . . . the district court's *remedy* is limited to such equitable relief as is considered appropriate.'"[31] The Ninth Circuit similarly found that *Varity* and *Amara* read together prohibit duplicative *remedies*, rather than prohibiting alternative theories of liability at the pleading stage.[32] Likewise, the Eighth Circuit reversed a district court's dismissal of a claim under § 1132(a)(3), finding that "[the defendant's] alleged liability

---

[27] *Id.* at 372 (emphasis added).

[28] *Id.* at 371.

[29] *Id.* at 382 (Stranch, dissenting).

[30] *Id.* at 383 (Stranch, dissenting).

[31] *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) (alteration in original).

[32] *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) ("This approach is an accurate application of *Amara* in light of *Varity* because it allows plaintiffs to plead alternate theories of relief without obtaining double recoveries.").

under (a)(3) flows from the process, not the denial of benefits itself," and accordingly, the claims properly asserted different theories of liability.[33]

Accordingly, the Court must consider whether 29 U.S.C. § 1132(a)(1)(B) "provides adequate relief for the alleged . . . injury,"[34] here, breaches of fiduciary duty incurred during Reliance's administration—not denial—of Brende's claim. Brende has pled that Reliance breached its fiduciary duty to her in administering her claim, a plausibly separate and distinct injury from the denial of benefits.[35] To the extent the injuries she claims as a result of these breaches are redressed by the Court's consideration of her denial of benefits, she may well be precluded from any additional equitable remedy. However, the Court finds that foreclosure of "other appropriate equitable relief" for these well-pled injuries is premature.

Finally, to the extent Reliance challenges particular remedies demanded in Brende's Complaint, the Court will consider the propriety of particular remedies at the same time it considers whether equitable remedies under § 1132(a)(3) are appropriate. Accordingly, Reliance's Motion to Dismiss Count II is denied.

### b. Count III: Statutory and Regulatory Noncompliance

Brende asserts a claim for statutory and regulatory noncompliance, alleging that Reliance violated various duties in how it processed her claim, including denying a full and fair review on appeal, failing to adjudicate the claim in a manner designed to ensure the independence and impartiality of the decision-maker, and failing to furnish certain descriptions, information, and

---

[33] *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 547 (8th Cir. 2017).

[34] *Lefler v. United Healthcare of Utah, Inc.*, 72 F. App'x 818, 826 (10th Cir. 2003) (citing *Varity*, 516 U.S. at 515).

[35] *See Jones*, 856 F.3d at 547.

documents relevant to the claim.[36] As a remedy, she seeks *de novo* review by the Court of her benefits claim. Reliance asserts that ERISA does not provide a cause of action for statutory and regulatory noncompliance and that this claim is redundant as it alleges the same harms alleged in Counts I and II.

> 29 C.F.R. § 2560.503-1(l)(2)(i) states:
>
>> In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section . . . the claimant is entitled to pursue any available remedies under section [1132(a)] of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. If a claimant chooses to pursue remedies under section [1132(a)] of the Act under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary.

As discussed above, Brende has plausibly pled that Reliance failed to strictly adhere to multiple statutory and regulatory requirements in the claims process, including failing to disclose certain descriptions, documents, and information. At the pleading stage, Brende has plausibly pled a claim for statutory and regulatory noncompliance.[37]

### c. Count IV

Finally, Brende asserts a claim for statutory and regulatory noncompliance, seeking a daily penalty under 29 U.S.C. § 1132(c). She argues that Reliance was the party who "actually administered the plan" and should therefore be liable for the penalty. Reliance asserts that under

---

[36] Brende asserts violations of 29 C.F.R.§ 2560.503-1(b), 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1(h), 29 C.F.R. § 2560.503-1(b)(7), 29 U.S.C. § 1029, 29 U.S.C. § 1132(a)(1)(A), 29 C.F.R. § 2560.503-1(h)(2)(III), and 29 C.R.R. § 2560.503-1(m)(8).

[37] *See Shore v. Procter & Gamble Health & Long-Term Disability Plan*, No. 18-2294-HLT-JPO, 2018 WL 5045193, at *5 (D. Kan. Oct. 17, 2018) ("To the extent Defendants contend Claim III must be dismissed because ERISA does not permit claims for "statutory or regulatory compliance" and the claim is otherwise an improper § [1132](a)(3) claim for equitable relief, the Court sees no reason for dismissal on the instant record, at this stage of the litigation . . . The regulation contemplates that a claimant might seek relief for failure to provide a reasonable claims process.").

the plain language of the statute, a plan insurer, such as Reliance, is not liable for the penalty. The Court agrees.

Under § 1132(c)(1), "any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish" may be liable, at the court's discretion, for a daily penalty. The ERISA statute expressly defines administrator:

> The term "administrator" means--
> **(i)** the person specifically so designated by the terms of the instrument under which the plan is operated;
> **(ii)** if an administrator is not so designated, the plan sponsor; or
> **(iii)** in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.[38]

Here, Reliance is not designated the administrator by the terms of the instrument, nor is it the plan sponsor. "Congress expressly declared that, when a plan administrator is named, that is the person liable for failing to disseminate requested plan information."[39] The Tenth Circuit has explicitly rejected Brende's argument that the plan insurer/claims administrator should be liable under the statute because it served as the *de facto* administrator: "The statutory language is clear and unambiguous, and admits of no other interpretation. This is not one of those 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'"[40] Other circuits have similarly held that the statutory language

---

[38] 29 U.S.C. § 1002(16)(A).

[39] *McKinsey v. Sentry Ins.*, No. CIV. A. 90-2387-Z, 1992 WL 101686, at *8 (D. Kan. Apr. 23, 1992), *aff'd*, 986 F.2d 401 (10th Cir. 1993).

[40] *McKinsey v. Sentry Ins.*, 986 F.2d 401, 404 (10th Cir. 1993) (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982) (alteration in original)).

forbids a claim under § 1132(c) against a *de facto* administrator who is not liable under the definition in the statute.[41]  Accordingly, Count IV is dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Reliance's Motion to Dismiss is **granted in part** and **denied in part**. The Court grants the motion with regard to Count IV and denies the motion with regard to Counts II and III.

**IT IS SO ORDERED.**

Dated: May 24, 2019

s/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[41] *See, e.g.*, *Tetreault v. Reliance Standard Life Ins. Co.*, 769 F.3d 49, 59 (1st Cir. 2014); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 62 (4th Cir. 1992), *as amended* (July 17, 1992); *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299–300 (9th Cir. 1989); *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1138 (D.C. Cir. 1989).